FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Dec 27, 2019

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| DAVID D.,[1] <br><br> Plaintiff, <br><br> v. <br><br> ANDREW M. SAUL, Commissioner of Social Security[2], <br><br> Defendant. | No. 4:19-CV-5006-EFS <br><br> **ORDER DENYING PLAINTIFF'S SUMMARY-JUDGMENT MOTION AND GRANTING DEFENDANT'S SUMMARY-JUDGMENT MOTION** |

Before the Court are the parties' cross summary-judgment motions. ECF Nos. 11 & 13. Plaintiff David D. appeals a denial of benefits by the Administrative Law Judge (ALJ). He alleges the ALJ erred by 1) improperly weighing the medical opinions; 2) discounting Plaintiff's mental impairments; 3) discounting Plaintiff's

---

[1] To protect the privacy of social-security plaintiffs, the Court refers to them by first name and last initial. *See* LCivR 5.2(c).

[2] Andrew M. Saul is now the Commissioner of the Social Security Administration. Accordingly, the Court substitutes Andrew M. Saul as the Defendant. *See* Fed. R. Civ. P. 25(d).

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 1

subjective complaints; 4) failing to properly consider lay statements; and 5) improperly conducting steps four and five. In contrast, Defendant Commissioner of Social Security asks the Court to affirm the ALJ's decision finding Plaintiff not disabled. After reviewing the record and relevant authority, the Court denies Plaintiff's Motion for Summary Judgment, ECF No. 11, and grants Defendant's Motion for Summary Judgment, ECF No. 13.

## I. Five-Step Disability Determination

A five-step sequential evaluation process is used to determine whether an adult claimant is disabled.[3] Step one assesses whether the claimant is currently engaged in substantial gainful activity.[4] If the claimant is engaged in substantial gainful activity, benefits are denied.[5] If not, the disability-evaluation proceeds to step two.[6]

Step two assesses whether the claimant has a medically severe impairment, or combination of impairments, which significantly limits the claimant's physical

---

[3] 20 C.F.R. §§ 404.1520(a), 416.920(a).

[4] *Id.* § 404.1520(a)(4)(i).

[5] *Id.* § 404.1520(b).

[6] *Id.*

or mental ability to do basic work activities.[7] If the claimant does not, benefits are denied.[8] If the claimant does, the disability-evaluation proceeds to step three.[9]

Step three compares the claimant's impairment(s) to several recognized by the Commissioner to be so severe as to preclude substantial gainful activity.[10] If an impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled.[11] If an impairment does not, the disability-evaluation proceeds to step four.

Step four assesses whether an impairment prevents the claimant from performing work he performed in the past by determining the claimant's residual functional capacity (RFC).[12] If the claimant is able to perform prior work, benefits are denied.[13] If the claimant cannot perform prior work, the disability-evaluation proceeds to step five.

Step five assesses whether the claimant can perform other substantial gainful work—work that exists in significant numbers in the national economy—in

---

[7] 20 C.F.R. § 404.1520(a)(4)(ii).

[8] *Id.* § 404.1520(c).

[9] *Id.*

[10] *Id.* § 404.1520(a)(4)(iii).

[11] *Id.* § 404.1520(d).

[12] *Id.* § 404.1520(a)(4)(iv).

[13] *Id.*

light of the claimant's RFC, age, education, and work experience.[14] If so, benefits are denied. If not, benefits are granted.[15]

The claimant has the initial burden of establishing entitlement to disability benefits under steps one through four.[16] At step five, the burden shifts to the Commissioner to show that the claimant is not entitled to benefits.[17]

## II. Factual and Procedural Summary

Plaintiff filed a Title II application and a Title XVI application, alleging a disability onset date of March 6, 2015.[18] His claim was denied initially and upon reconsideration.[19] An administrative hearing was held before Administrative Law Judge Stewart Stallings.[20]

In denying Plaintiff's disability claim, the ALJ made the following findings:

- Step one: Plaintiff had not engaged in substantial gainful activity since March 6, 2015, the alleged onset date;

---

[14] 20 C.F.R. § 404.1520(a)(4)(v); *Kail v. Heckler*, 722 F.2d 1496, 1497–98 (9th Cir. 1984).

[15] 20 C.F.R. § 404.1520(g).

[16] *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007).

[17] *Id.*

[18] AR 72.

[19] AR 243-47.

[20] AR 114-61.

- Step two: Plaintiff had the following medically determinable severe impairments: diffuse osteoarthritis, including back pain and knee pain; hand numbness; hypoglycemia; and asthma;
- Step three: Plaintiff did not have an impairment or combination of impairments that meets or medically equaled the severity of one of the listed impairments;
- RFC: Plaintiff had the RFC to perform medium work as defined in 20 C.F.R. §§ 404.1567(c) and 416.967(c), except Plaintiff is limited to the following:

    > frequent climbing of ladders, ropes, scaffolds, ramps and stairs; frequent balancing and crouching; occasional stooping, kneeling and crawling; frequent handling and fingering with the non-dominant left upper extremity; no more than frequent exposure to excessive vibration, moving dangerous machinery and unprotected heights; no more than rare exposure to pulmonary irritants and chemicals (rare is defined as no more than 15% of the workday) . . . [and] work in which concentration is not critical (critical is defined as careful, exact evaluation and judgment).

- Step four: Plaintiff was capable of performing past relevant work as a as an armored car driver, housekeeper, and janitor;
- Step five: considering Plaintiff's RFC, age, education, and work history, Plaintiff was capable of making a successful adjustment to other work that existed in significant numbers in the national economy; and

- Plaintiff was not disabled from March 6, 2015, through the date of the ALJ decision on January 30, 2018.[21]

When assessing the medical-opinion evidence, the ALJ gave:

- partial weight to examining opinion of Gregory Sawyer, M.D.; and the reviewing opinions of state agency psychological consultants, Leslie Postovoit, Ph.D., and Mathew Comrie, Psy.D.
- great weight to the examining opinion of William Drenguis, M.D.; reviewing opinion of the state agency medical consultant, Guillermo Rubio, M.D.; and reviewing opinion of state agency psychological consultant, Nancy Winfrey, Ph.D.[22]

The ALJ also found that Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms were not consistent with the medical record as a whole.[23] And the ALJ gave little weight to the lay testimony of Plaintiff's wife, Leslie Dale.

Plaintiff requested review of the ALJ's decision by the Appeals Council, which denied review.[24] Plaintiff timely appealed to this Court.

---

[21] AR 74-86.

[22] AR 80-84.

[23] AR 81.

[24] AR 1-4.

## III.   Standard or Review

A district court's review of the Commissioner's final decision is limited. The Commissioner's decision is set aside "only if it is not supported by substantial evidence or is based on legal error." Substantial evidence is "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Moreover, because it is the role of the ALJ and not the Court to weigh conflicting evidence, the Court upholds the ALJ's findings "if they are supported by inferences reasonably drawn from the record." The Court considers the entire record as a whole.

Further, the Court may not reverse an ALJ decision due to a harmless error. An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." The party appealing the ALJ's decision generally bears the burden of establishing harm.

## IV.   Applicable Law and Analysis

**A.   Medical Opinions: Plaintiff failed to establish consequential error.**

Plaintiff challenges the ALJ's assignment of partial weight to the examining opinion of Gregory Sawyer, Ph.D. The record reflects that Dr. Sawyer evaluated Plaintiff on July 11, 2015.[25] Dr. Sawyer diagnosed Plaintiff with major depressive disorder, severe, recurrent, without psychotic features, currently in partial remission secondary to medication; neurological disorder secondary to trauma; and

---

[25] AR 562-571.

a history of ADHD and PTSD.[26] Dr. Sawyer opined that Plaintiff is capable of performing simple and repetitive tasks; consistently and independently maintaining effective social interactions with supervisors, coworkers, and the public; maintaining regular attendance in the workplace; and completing a normal workday or workweek without interruptions.[27] Dr. Sawyer also opined that Plaintiff will have difficulty performing detailed and complex tasks; accepting instructions from supervisors; understanding, carrying out, and remembering complex and one or two-step instructions; performing activities on a consistent basis without additional instruction; sustaining concentration and persisting in work-related activities at a reasonable pace; and dealing with the usual stress encountered in the workplace.[28]

Dr. Sawyer's opinion was contradicted by the reviewing opinion of Dr. Winfrey, who opined that Plaintiff's depression is mild and well-managed with medication, and that the record showed no objective evidence to support alleged diagnoses of PTSD, ADHD, or cognitive impairment.[29] Accordingly, the ALJ who is tasked with weighing conflicting medical opinions is required to provide specific

---

[26] AR 569.

[27] AR 570.

[28] AR 570-71.

[29] AR 133-38.

and legitimate reasons supported by substantial evidence for discounting Dr. Sawyer's opinion.[30]

The ALJ discounted Dr. Sawyer's opinion because the record did not support Dr. Sawyer's diagnosis of ADHD, neurological disorder, or PTSD, and Dr. Sawyer did not have the benefit of reviewing the psychological examination. Ultimately, the ALJ assigned more weight to the contradicting opinion of Dr. Winfrey because she had the opportunity to review the entire record and her opinion was more consistent with the objective medical findings.[31] Plaintiff failed to establish that the ALJ's weighing of Dr. Sawyer's opinion was erroneous.

---

[30] The weighing of medical-source opinions is dependent upon the nature of the medical relationship, i.e., 1) a treating physician, 2) an examining physician, and 3) a non-examining physician. *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014). Generally, more weight is given to the opinion of a treating physician than to the opinion of a non-treating physician. *Id*. However, when a treating physician's opinion is contradicted by another physician's opinion, it may be rejected with "specific and legitimate reasons" supported by substantial evidence in the record. *Id.*; *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995) (The opinion of a nonexamining physician serves as substantial evidence if it is supported by other independent evidence in the record.).

[31] AR 83.

An ALJ may discredit physicians' opinions that are unsupported by the record as a whole or the objective medical findings.[32] Moreover, the extent to which a medical source is "familiar with the other information in [the claimant's] case record" is relevant in assessing the weight of that source's medical opinion.[33] Here, when weighing the opinion evidence of Dr. Sawyer, the ALJ highlighted the fact Dr. Winfrey had the opportunity to review all relevant medical records before forming her opinion – specifically, the August 2017 comprehensive psychological examination performed by Dr. Lindman, which revealed low average to average intellectual and cognitive functioning, scores within the average range in Part A of the Trail Making Test, and a score in the above average range on Part B of the test, leading to diagnosing Plaintiff with no cognitive or intellectual impairments, and unspecified depression by history.[34] The ALJ also highlighted the fact Dr. Winfrey's opinion was more consistent with the objective medical findings and well supported by the record as a whole.[35]

---

[32] *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004).

[33] *See* 20 C.F.R. § 416.927(c)(6).

[34] AR 132-33; *see generally* AR -896-99.

[35] AR 130 (Plaintiff reported depression improving with medication); AR 580 (Plaintiff reports that his sleep is "fair." "I'd give it an 8 out of 10."); AR 593 (Plaintiff "[d]enies: dizziness, seizures, syncope, numbness, or tingling."); AR 617

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 10

As Plaintiff points out, the ALJ misstates the record in making his findings.[36] The ALJ incorrectly stated that "the record does not support [Dr. Sawyer's] diagnoses of ADHD, neurological disorder or PTSD," when Dr. Sawyer diagnosed Plaintiff with a neurological disorder secondary to trauma, and a history of ADHD and PTSD.[37] However, given the broader scope of the ALJ's discussion, the minor error does not necessitate remand in light of the fact that Plaintiff's reported claims of ADHD and PTSD were adequately discussed and the ALJ's decision was supported by substantial evidence.[38]

---

(Plaintiff "self [reports] as having [PTSD] and [ADHD]. This is not supported in his VA cprs records.").

[36] ECF No. 11 at 12.

[37] AR 83.

[38] *See Hartzog v. Berryhill*, No. Civ. 18-484, 2019 WL 4534167, at *1 n 1 (W.D. Pa. Sept. 19, 2019); *see, e.g.,* AR 75 (ALJ highlighted Dr. Winfrey "noted that there is no objective evidence to support the claimant's alleged diagnoses of PTSD, ADHD or cognitive/intellectual impairment."); AR 76 (The ALJ "concurs with the opinions of Dr. Winfrey and finds the claimant's alleged PTSD, ADHD, and cognitive/learning disorders are not medically determinable impairments due to the lack of objective evidence."); AR 78 ("The claimant alleges disability as of March 6, 2015, because the ADHD, PTSD, high blood pressure, nerve damage in hands, migraines, asthma, and low blood pressure."); AR 83 ("Dr. Sawyer diagnosed the claimant with . . .

On this record, the AJL's findings that Dr. Winfrey's opinion is more consistent with the record as a whole and supported by the objective medical findings is supported by substantial evidence. This is a specific and legitimate reason to discount Dr. Sawyer's opinion.

B.     **Mental Impairments: Plaintiff fails to establish consequential error.**

Plaintiff argues the ALJ erred at step two by improperly rejecting Plaintiff's mental impairments as groundless.[39] At step two of the sequential process, the ALJ must determine whether claimant suffers from a "severe" impairment, i.e., one that significantly limits his physical or mental ability to do basic work activities.[40] When a claimant alleges a severe mental impairment, the ALJ must follow a two-step "special technique" at steps two and three. First, the ALJ must evaluate the claimant's "pertinent symptoms, signs, and laboratory findings to determine whether [he or she has] a medically determinable impairment."[41] Second, the "degree of functional limitation resulting from [the claimant's] impairments" in four broad areas of functioning: activities of daily living; social functioning; concentration,

---

neurological disorder secondary to trauma; history of ADHD, and history of PTSD."); AR 137-38 (Dr. Winfrey agreed that "the record doesn't support intellectual dysfunction or post traumatic stress disorder or an ADHD kind of disorder.").

[39] ECF No. 11 at 13-14.

[40] 20 C.F.R. §§ 404.1505, 416.920(c).

[41] 20 C.F.R. §§ 404.1520a, 416.920a.

persistence or pace; and episodes of decompensation. Functional limitation is measured as "none, mild, moderate, marked, and extreme." If limitation is found to be "none" or "mild," the impairment is generally considered to not be severe. If the impairment is severe, the ALJ proceeds to determine whether the impairment meets or is equivalent in severity to a listed mental disorder.

Step two is "a de minimus screening device [used] to dispose of groundless claims."[42] "Thus, applying our normal standard of review to the requirements of step two, [the Court] must determine whether the ALJ had substantial evidence to find that the medical evidence clearly established that [Plaintiff] did not have a medically severe impairment or combination of impairments."[43]

Plaintiff asserts the ALJ erred at step two by failing to identify his depressive disorder and neurological disorder conditions as severe impairments.[44] However, Plaintiff's argument is based entirely on the assumption that the medical records and opinion of Dr. Winfrey were "more than enough" to satisfy step two.[45] As discussed previously, Plaintiff failed to develop any argument to support Plaintiff's assertion that the ALJ erred in evaluating the mental impairment opinion evidence.[46] Therefore, Plaintiff does not establish error in the ALJ's step two

---

[42] *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996).
[43] *Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005).
[44] ECF No. 11 at 13-14.
[45] ECF No. 11.
[46] *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 155, 1161 n. 2 (9th Cir. 2008).

analysis. The ALJ reasonably relied on the opinion of Dr. Winfrey and Dr. Lindman's psychological evaluation to conclude Plaintiff's claims of PTSD, ADHD, and cognitive learning disorder were not medically determinable impairments and Plaintiff's depression was not a severe impairment.[47]

## C. Plaintiff's Symptom Reports: Plaintiff failed to establish error.

Plaintiff argues the ALJ failed to 1) identify what testimony was not credible and why; and 2) rely on reasons that were clear and convincing in discrediting his symptom claims.[48] In examining Plaintiff's symptom reports, the ALJ must make a two-step inquiry. "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged."[49] Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection."[50] Here, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms, but that Plaintiff's statements concerning the intensity,

---

[47] AR 75-77.

[48] ECF No. 11 at 16-19.

[49] *Molina*, 674 F.3d at 1112.

[50] *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (quoting *Lingenfelter*, 504 F.3d at 1036).

persistence, and limiting effects of his symptoms were not entirely consistent with the evidence.[51] Specifically, the ALJ found Plaintiff's symptom reports inconsistent with the objective medical evidence and Plaintiff's work-related activities.

First, as to Plaintiff's claim concerning the intensity, persistence, and limiting effects of Plaintiff's symptoms, the ALJ found that the objective medical evidence was inconsistent with this claim.[52] Symptom reports cannot be solely discounted on the grounds that they were not fully corroborated by the objective medical evidence.[53] However, medical evidence is a relevant factor in considering the severity of the reported symptoms. [54] In contrast to Plaintiff's reported disabling symptoms due to his ADHD, PTSD, high blood pressure, nerve damage in hands, migraines, asthma, and low blood pressure, the ALJ found that the medical evidence supported a finding that Plaintiff was able to perform medium work with postural restrictions and work in which concentration is not critical.[55] This finding is rational and supported by substantial evidence.

When summarizing the medical evidence, the ALJ highlighted that the August 2015 x-ray revealed mild intervertebral disc space narrowing at L4-L5 and

---

[51] AR 78-79.

[52] AR 78-82.

[53] *See Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001).

[54] *Id.*

[55] AR 82.

L5-S1.[56] Physical examinations of Plaintiff revealed a normal gait, strength in the upper and lower extremities, including elbows, wrists, thumbs and fingers, and normal range of motion, and that Plaintiff's hypoglycemia and asthma were largely controlled with treatment and proper diet. The ALJ further highlighted that, while Plaintiff alleges significant cognitive, memory, concentration, and task completion issues, the August 2017 psychological examination resulted in a diagnosis of "no cognitive or intellectual impairment" and "unspecified depression, by history."[57] The ALJ rationally compared the objective medical evidence against Plaintiff's symptom reports and found that Plaintiff's symptom reports were not fully supported by the objective medical evidence.

Next, the ALJ's finding that Plaintiff's statements concerning the intensity, persistence and limiting effects of his symptoms were inconsistent with Plaintiff's work history was rational and supported by substantial evidence.[58] For instance, Plaintiff testified that he has only been able to work part-time due to physical limitations and memory issues, while Plaintiff reported to his treatment providers that he was working landscaping jobs and at times looking for additional part-time

---

[56] AR 697.

[57] AR 899.

[58] AR 81.

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 16

work to help with expenses.[59] The ALJ reasonably concluded that Plaintiff's work history was inconsistent with his alleged ability to work.[60]

On this record, the ALJ reasonably concluded that Plaintiff inconsistently reported his medical impairments and work-related activities. This finding is supported by substantial evidence and was a clear and convincing reason to discount Plaintiff's symptom complaints.

---

[59] AR 606 ("Vet told me that he is taking on another part time job to help ends meet."); AR 608 ("Vet continues to work part time and also do lawn/sprinkler jobs."); AR 611 ("[H]as new part time job at night and he continues to mow lawns/yard care too."); AR 639 ("Veteran states he is staying very busy working in people's yards. Is helping his brother and sister with their lawns, as well as some around his neighborhood."); AR 776 (noting "working part time Craigs' list helping people who cannot do yardwork, also custodial work couple hours nightly").

[60] *See Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1227 (rejecting the claimant's symptom testimony in part because the claimant sought work during period of alleged disability); *see also Woznick v. Colvin*, No. 6:15-cv-00111-AA, 2016 WL 1718363, at *4 (D. Or. Apr. 29, 2016) (finding the ALJ reasonably discredited the claimant's symptom testimony in light of her efforts to seek work); *Lizarraga v. Colvin*, No. CV 14-9116-FFM, 2016 WL 1604704, at *4 (C.D. Cal. Apr. 21, 2016) (same).

**D.     Lay Witness Testimony: Plaintiff failed to establish error.**

An ALJ must consider the testimony of lay witnesses in determining how an impairment affects the claimant's ability to work, and, if the lay witness statements are rejected, the ALJ must give germane reasons for discounting such statements.[61] Plaintiff argues the ALJ failed to provide a germane reason for discounting the lay witness statement from Plaintiff's wife, Leslie Dale.

The ALJ assigned little weight to Ms. Dale's statements because they essentially mirrored those of Plaintiff and were not fully supported by the objective medical findings.[62] Because these statements are similar to Plaintiff's symptom reports, and the ALJ properly discounted Plaintiff's symptom reports for clear and convincing reason, the ALJ needed only to point to the same reasons to discount this lay testimony.[63] There were germane reasons for discounting Ms. Dale's statements.

---

[61] *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1053 (9th Cir. 2006); *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996) (citing *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993)).

[62] AR 84.

[63] *See Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009) (holding that where the ALJ provided clear and convincing reasons to discredit the claimant's subjective complaints, it follows that the ALJ also gave germane reasons to reject the claimant's wife's similar testimony).

E.  **Steps Four and Five**

Plaintiff argues the ALJ erred at steps four and five because the vocational expert's testimony was based on an incomplete hypothetical that failed to include "more than one or two unscheduled absences per month; a reduction in production greater than 20% as compared to the typical worker; occasional handling and fingering bilaterally; and the need for ongoing demonstrations from a supervisor or coworker past the probationary period."[64] Plaintiff's argument is based on his initial argument that the ALJ erred in considering the medical-opinion evidence and Plaintiff's symptom reports. For the above-explained reasons, the ALJ's consideration of the medical-opinion evidence and Plaintiff's symptom reports were legally sufficient and supported by substantial evidence. The ALJ did not err in assessing the RFC or finding Plaintiff capable of performing past work and other work existing in the national economy.[65]

V.  **Conclusion**

Accordingly, **IT IS HEREBY ORDERED**:

1. Plaintiff's Motion for Summary Judgment, **ECF No. 11**, is **DENIED**.

---

[64] ECF No. 11 at 20.

[65] *See Magallanes v. Bowen*, 881 F.2d 747, 756–57 (9th Cir. 1989) (holding it is proper for the ALJ to limit a hypothetical to those restrictions supported by substantial evidence in the record).

2. The Commissioner's Motion for Summary Judgment, **ECF No. 13**, is **GRANTED**.

3. The Clerk's Office shall enter **JUDGMENT** in favor of Defendant.

4. This case shall be **CLOSED**.

**IT IS SO ORDERED.** The Clerk's Office is directed to enter this Order and provide copies to all counsel.

**DATED** this   27th   day of December 2019.

_s/Edward F. Shea_
EDWARD F. SHEA
Senior United States District Judge
